JONES *v*. LINCOLN COUNTY.

[73 South. 620, Division B.]

1. HIGHWAYS. *Highway districts. Employment of counsel.*
  Where a board of supervisors was interested in maintaining the validity of bonds issued by it, in a proceeding to organize a good road district and the road commissioners were interested to defeat the bond issue, so that the interest of the board of super-

visors and the interest of the commissioners was in direct con-
flict, in a suit to sustain the regularity and validity of such bonds
the commissioners were entitled to be represented by counsel
of their own choosing although the board of supervisors had em-
ployed able counsel to represent both sides of the controversy.

2. HIGHWAYS. *Good roads districts. Statute. Construction.*

Under Laws 1914, chapter 176, section 5, in relation to the duty and
powers of highway commissions and providing that such commis-
sioners may employ legal counsel if necessary, such board of
commissioners are not required to submit contracts for the em-
ployment of counsel to the board of supervisors, since the act
does not specifically require this to be done, although such
act does require that the commissioners submit to the board of
supervisors for approval their plans for the establishment and
construction of roads.

APPEAL from the circuit court of Lincoln county.
HON. D. M. MILLER, Judge.

Suit by P. Z. Jones against Lincoln County. From
a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

COOK, P. J., delivered the opinion of the court.

We avail ourselves of the statement in the briefs
for the facts of this case, as the statement will make
clear our conclusions, and it reflects the issues involved:

"This is a suit for an attorney's fee against Lincoln
county for services rendered in winning the suit of
*Lincoln County et al.* v. *C. S. Butterfield et al.*, 72 So.
274, under employment by 'good road commissioners.'
A claim allowed and approved by the road commis-
sioners was filed before the board of supervisors, and a
warrant requseted, which being refused, an appeal was
prosecuted to the circuit court, where the action of the
board was affirmed. Motion for a new trial was made
and overruled, and an appeal is taken to this court. By
agreement of the parties, the record in the supreme
court in the cause aforesaid is to be considered as a
part of this record. . . .

"The road commissioners who employed the attorney did not have themselves made parties to the litigation, but the names of taxpayers were used in getting the question involved before the court; these taxpayers appearing by supplemental bill, with the consent and on invitation of the original complainants in the original bill.

"Some several years previous to January, 1916, supervisors' district No. 1 of Lincoln county had been organized into a good roads district, under Laws 1910, ch. 149, the predecessor of chapter 176, Laws 1914. Under this last-mentioned law an effort was made to organize the entire county into a good roads district, embracing and including the good roads district of supervisors' district No. 1. New commissioners were appointed for the enlarged district, and the old commissioners were removed, or rather one of them, Hon. M. McCullough, resigned, and the board of supervisors removed the other two by order placed on their minutes. Provision was made for the issuance of bonds in the sum of two hundred thousand dollars, and bids were advertised for and received and accepted, and the bonds sold to the two banking institutions of Brookhaven, Miss.

"Some question was raised by the law firm of Dillon, Thompson & Clay, expert bond attorneys, as to the validity of the proceedings by the board, and the bond issue was turned down until an order of the courts could be obtained sustaining their regularity. An arrangement was made for a friendly test suit. . . .

"The board employed counsel to defend the suit, and about this stage of the game the commissioners of the good roads district, realizing that the taxpayers of district No. 1 were about to be subjected to double taxation, after they had constructed their own roads, for the purpose of building roads in other portions of the county, and that good roads district No. 1 was about to be abolished and wiped out, while their obli-

gations were left intact, and an additional burden of two hundred thousand dollars placed upon them, sought the employment of counsel to represent the taxpayers of good roads district No. 1 in this matter. . . .

"The contentions made by the complainants in the original and supplemental bills were sustained by the supreme court, and the wisdom and good judgment of the road commissioners as to the preservation of the interest and good of district No. 1 were thus vindicated. The rights of that district represented by them were unlawfully assailed by the board of supervisors, as was demonstrated by the holding of the supreme court."

This litigation involves and is controlled by section 5, chapter 176, Laws 1914, and the precise question submitted to us is about this: Did the road commissioners have the authority to employ an attorney to represent the interests of road district No. 1 in the litigation mentioned in the statement of facts, without first obtaining the approval of the board of supervisors? As we understand the case, we are simply called on to interpret the statute. The statute is in these words, viz:

"Highway Commission Created; Duties and Powers of Same.—That it shall be the duty of the board of supervisors in case such election shall result in favor of the issuance of bonds, or if there be no election, at their next regular meeting, or any subsequent meeting, appoint three commissioners, who shall be qualified electors of such district or districts and real estate owners therein, who shall hold office for a term of four years from the time of their appointment and until their successors are appointed by the board of supervisors, whose duty it shall be to have the management and supervision of the construction and maintenance of the roads built under the provisions of this act, subject to the approval of the board of supervisors; and for their services shall be paid their actual expenses, not exceeding one hundred dollars each per

annum; such commissioners may employ legal counsel if necessary, and pay a reasonable compensation for the same; and it shall be the duty of such commissioners, subject to the approval of the board of supervisors, to determine and fix what road or roads shall be constructed or constructed and maintained or maintained in such district or district out of the proceeds of the sale of such bonds and the levy of such taxes; and it shall be their duty to let all contracts for the construction, or for the construction and maintenance or for the maintenance of such roads in the manner now provided by law for the letting of contracts for public work by the board of supervisors; and it shall be their duty to employ a competent engineer to survey and lay out such road or roads in such district or districts, as they shall determine upon, whose duty it shall be to make an estimate of the cost of constructing and maintaining such highway or highways for each separate mile covered by such survey, and report such survey and estimate to said commissioners before contracts are let for the construction or for the construction and maintenance of such highway or highways; which survey and estimate said commissioners shall have the power to adopt or reject, and in the latter event to have another made; and when adopted, it shall be their duty to report the same to the board of supervisors, whose duty it shall be to order the clerk of said board to file the same among the records of the office, and spread the same on the minutes of the board and make an order adopting such survey, and estimate so reported and adopted by such commissioners; all of which acts of said commissioners to be subject to the ratification or rejection by the board of supervisors."

It is perfectly obvious that the board of supervisors was interested in maintaining the validity of the bonds issued by it, and it is equally clear that it was to the interest of the road commissioners to defeat the bond issue. So, as a matter of fact, the interests of the board

of supervisors and the interest of road district No. 1 were in direct conflict.

True, lawyers were employed to represent both sides, and we do not go outside the record when we say that they fully and ably performed the duties assigned to them, but it nevertheless appears that the road commissioners were not represented by counsel chosen by them, and we think they were entitled to counsel of their own selection, if the law gave them this right.

It would seem clear that the statute (section 5, chapter 176, Laws 1914) in express terms confers this power upon the commissioners. The statute requires that the plans for the establishment and construction of the roads shall be submitted to the board of supervisors, and very properly so. When we come to consider that part of the statute authorizing the employment of "legal counsel if necessary, and pay a reasonable compensation for the same," we fail to find anything in the statute which indicates that the legislature intended that the commissioners should first obtain the approval of the board of supervisors. Nothing of that kind appears in the statute, and it is the statute we are construing.

It will be clear to all lawyers that it was necessary to recognize the supervisory control vested in the board of supervisors over the public roads, and this thought was evidently in the mind of the draftsman of the statute in question, and it is also quite clear that the administrative features of the act were confided to the road commissioners, and seems clear from the context that the legislature did not intend to require that contracts for the employment of legal counsel should be submitted to the board of supervisors.

This being our view of the meaning of the statute, we think the trial court erred in holding to the contrary; and, as there seems to be no controversy about the propriety of the employment of counsel, or the size

of the fee, the judgment of the circuit court will be reversed, and judgment will be entered here for the amount of the fee agreed upon.

*Reversed, and judgment here.*